UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANTHONY RYANS,

          Petitioner,

-against-

PHILIP HEATH,

          Respondent.
-----------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 0 2013 ★
LONG ISLAND OFFICE

**MEMORANDUM & ORDER**
10-CV-1969 (TCP)

PLATT, District Judge.

Before the Court is Anthony Ryans' ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254. ECF No. 1. The Petition challenges Petitioner's conviction, following a jury trial in New York State Supreme Court (Suffolk County), and the subsequently imposed sentence. Pet'r's Pet. 1. The Court **DENIES** Petitioner's petition.

## BACKGROUND

### A. Facts

"On March 29, 2004, three armed, masked men entered [a Radio Shack in Oakdale, New York] with intent to commit a robbery. Each man was armed with a loaded working pistol and . . . [e]ach man was also dressed in dark clothing and wore a mask." Resp't's Answer ¶ 6. While robbing the store, one of the three men shot and killed an employee of the store. *Id.* at ¶ 7.

As the three men fled the scene, a Suffolk County police officer noticed a suspicious looking black Volvo near the scene of the crime; the officer followed the Volvo as it left the scene of the crime. *Id.* at ¶ 8. From related police radio broadcasts, the officer "knew that three black men had attempted to rob the Radio Shack" and that, while the get-away car was believed to be a blue Reliant, the black Volvo fit the basic description of the get-away car (and the officer saw it leave the scene shortly after the crime). *Id.* at ¶ 9. When the officer's patrol car drove near

the Volvo, the officer saw three black men inside of it (fitting the description of the men from the Radio Shack). *Id.* When the officer attempted to pull-over the Volvo, the car fled. *Id.* at ¶ 10. The Volvo finally crashed into a stop sign and the passengers fled on foot. *Id.* at ¶¶ 10-11.

Eventually, police officers caught the three men from the Volvo, including Petitioner. *Id.* at ¶¶ 11-13. "The video surveillance tape from the Radio Shack, each defendant's physical description and clothing, the gun each man carried, and the ballistic evidence from the crime scene established each defendant's role in this crime." *Id.* at ¶ 14. The trial evidence included the testimony of a witness, Ms. Yohanna Jaure, "a representative of Nextel [who was called] to establish the presence of [Petitioner] in the *vicinity* of the Radio Shack at the time of the robbery." Pet'r's Pet. ¶ 21 (emphasis added). The Suffolk County District Attorney's Office, who prosecuted the case, established at trial that one of the men who robbed the Radio Shack was Petitioner. "Based on this evidence, [Petitioner] was acquitted of [] first degree murder but was found guilty of second degree felony murder." *Id.* at ¶ 20.

Petitioner is a prisoner at Ossining Correctional Facility in Ossining, New York. Pet'r's Pet. ¶ 4. Petitioner appealed his conviction; the New York Appellate Division affirmed the conviction. *See People v. Ryans*, 868 N.Y.S.2d 534 (N.Y. App. Div. 2009). The Appellate Division held that "[c]ontrary to the defendant's contention, the record demonstrates that he received the effective assistance of trial counsel. Defense counsel's trial strategy apparently was to secure his acquittal of murder in the first degree, which strategy was successful."

B.  **Claims**

The Petition is based upon three claims: (i) "[Petitioner] was denied his right to counsel under the 6th and 14th Amendments to the Constitution"; (ii) "he was deprived of a fair trial under the 5th and 14th Amendments to the Constitution"; and (iii) "[Petitioner] was deprived of due process rights". Pet'r's Pet. ¶¶ 33, 35.

## DISCUSSION

A.  **Legal Standard for a Petition for a Writ of Habeas Corpus**

   I.  **Generally**

>  The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 131 S. Ct. 770, 780 (2011).

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in the state courts. *See* 28 U.S.C. § 2254(b)(1)(a). Exhaustion requires alerting the state courts to the Federal nature of the claim and raising the claim in the state's highest court. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999).

> If an application [for a Writ of Habeas Corpus] includes a claim that has been "adjudicated on the merits in State court proceedings," § 2254(d), an additional restriction applies. Under § 2254(d), that application "shall not be granted with respect to [such a] claim ... unless the adjudication of the claim": "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "This is [] 'difficult to meet,' *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), and "highly deferential standard for evaluating state-court rulings, which demands that

3

state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

**II.    Analysis**

Petitioner exhausted all remedies available to him in the State courts and alerted the State courts to the federal nature of his claims. As such, the Petition is properly before this Court.

The State courts adjudicated Petitioner's claims on their merits. Neither the trial court's decision nor the Appellate Division's affirmation were contrary to, or unreasonably applied, clearly established Federal law. *Cullen*, 131 S. Ct. at 1398. The Court holds, *in toto*, that the State courts' holdings were based upon reasonable determinations of the facts before those courts. *Id.*

**B.    Ineffective Assistance of Counsel**

**i.    Legal Standard**

"[T]he proper standard for attorney performance is that of reasonably effective assistance[;] . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

"Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest . . . . Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

4

"A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citations omitted).

As to habeas review,

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 131 S. Ct. at 785-86 (internal citations and quotations omitted; italics in original).

### ii. Analysis

For emphasis, this Court's job, under *Harrington*, is not to decide whether Petitioner's counsel met the *Strickland* standard; rather, it is to determine whether the State court's determination on the issue was reasonable. 131 S. Ct. at 785. The Appellate Division held that "the record demonstrates that [Petitioner] received the effective assistance of trial counsel[.] Defense counsel's trial strategy apparently was to secure his acquittal of murder in the first degree, which strategy was successful." *People v. Ryans*, 868 N.Y.S.2d 534 (N.Y. App. Div. 2009) (internal citations omitted).

The State court reasonably held, implicitly, that Petitioner's trial counsel's "conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Indeed, the State court held, as noted *supra*, that counsel's strategy was to help his client avoid a first

degree murder conviction. That strategy was successful. Trial counsel's strategy was clearly reasonable; more importantly to this Court's analysis, the State court's holding was a reasonable application of *Strickland*. As Respondent argues in its memorandum to this review,

> Trial counsel correctly conceded certain issues and did not ask for down[-]charges because those actions were inconsistent with [trial counsel's] well-planned and [-]executed trial strategy. Defense counsel was faced with overwhelming proof of [Petitioner's] guilt so [counsel] chose to contest the first degree murder charge. [Counsel's] strategy worked and his actions were consistent with his plan.

Resp't's Mem. Opp'n 7. The Court concurs; the State court's holding was reasonable.

Whether a great lawyer would have requested a *Dunaway* hearing or the inclusion of lesser charges is not the Court's concern as to the Petition; the reasonableness of the State court's determinations is. As the Court finds the State court's holding was reasonable, the Petition is denied.

### C. Evidentiary Ruling

#### i. Standard

"A federal habeas court may, of course, review an error of state evidentiary law to assess whether the error deprived the petitioner of his due process right to a 'fundamentally fair trial.'" *Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) (quoting *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004)). That said, "state trial court evidentiary rulings generally are not a basis for habeas relief." *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

The Court should not overturn an evidentiary ruling if "[t]he evidence at issue here was at least arguably relevant, and even assuming there was error, the evidence was not so extremely

unfair that its admission violated fundamental conceptions of justice." *Vega*, 669 F.3d at 126 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotations omitted)).

### ii. Analysis

The Appellate Division held that Petitioner's appeal of the trial court's evidentiary ruling was "without merit." *Ryans*, 868 N.Y.S.2d 534. Ms. Jaure's testimony was certainly arguably relevant: it placed Petitioner near the scene of crime (within 1-3/4 mile radius). Petitioner fails to prove that permitting the witness was in error.

Petitioner did not have a Constitutional right to (i) be told when the prosecution would call a certain witness during the prosecution's case-in-chief or (ii) forbid the prosecution from amending its witness-list. The prosecution surely had ethical obligations to Petitioner; amending a witness-list is not one of them. Petitioner's argument on this issue is wholly without merit.

The Court agrees with Respondent as to the lack of prejudice regarding the use of the witness. The witness placed Petitioner within a 1-3/4 mile radius of the Radio Shack; it did not place Petitioner inside of the store. The Petition itself admits this: "[the witness was called] to establish the presence of [Petitioner] in the *vicinity* of the Radio Shack at the time of the robbery." Pet'r's Pet. ¶ 21 (emphasis added). The Petitioner admits, therein, that the witness did not place Petitioner in the store.

Finally, the Court finds it telling that Petitioner argues, in his ineffective assistance of counsel claim, that his counsel was so terrible that counsel fell below a minimal, Constitutional standard of assistance; in this claim, however, Petitioner argues counsel would have instituted an entirely new line of defense if he had simply known that Ms. Jaure would testify. In other words, if claim one is valid, Petitioner cannot honestly believe claim two is as well (and *vice versa*).

The Court holds the State court made a reasonable determination as to the evidentiary question. The evidence-at-issue was arguably relevant; Petitioner did not prove its admissibility was in error; and the admission was not so extremely unfair as to violate "fundamental conceptions of justice." *Vega*, 669 F.3d at 126. Moreover, Petitioner fails to establish that the ruling deprived him of a fundamentally fair trial. *See, e.g., Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)). Petitioner's claim is denied as to the evidentiary ruling.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Petition for a Writ of Habeas Corpus.

**SO ORDERED.**

Dated: September 6, 2013
Central Islip, New York

/s/ Thomas C. Platt
_____
Thomas C. Platt, U.S.D.J.